JOHN F. PROCTOR *vs.* MAINE CENTRAL RAILROAD COMPANY.

Cumberland.   Opinion July 14, 1906.   •

*Adverse Possession. No Continuous Occupation for Twenty Years. No Written*
*Claim for Improvements Filed. Same Deemed Waived, When. Compensation*
*Allowed for Beneficial Improvements Only. Increased Value of Land by*
*Reason of Improvements. Value of Land Without Improvements.*
*R. S., c. 106, §§ 24, 26, 27, 28, 29, 30, 31.*

1.  The tenant having set up a claim of title by adverse possession against
    the demandant's record title, the court is of opinion that, assuming that all
    the other essentials of adverse occupation have been proved, the tenant
    has failed to show occupation for any continuous period of twenty years.
    Accordingly the defense fails and the demandant is entitled to judgment.

2.  Although the record before the court does not disclose whether the tenant
    filed in the court below a written claim for compensation for improvements,
    or whether the demandant filed a request in writing for an estimation for
    what would have been the value of the premises, at the time of the trial,
    if no improvements had been made, yet the parties had the right to waive
    these provisions of statute. And when both parties introduced evidence
    on the subject and the question was argued, the court, when the case
    comes upon report, will assume that they were waived, nothing to the
    contrary appearing.

3.  Nothing can be deemed an "improvement" for which compensation
    may be allowed, which does not benefit the land, and increase its value to
    the true owner. Under this rule the tenant's claim in this case for ties,
    rails and equipment must be disregarded.

4.  The court is of opinion that the filling on the demandant's flats by the
    tenant, did add somewhat to the value of the flats, and that the tenant is
    entitled to be allowed for the increased value.

5.  Taking all the conditions into account the court is of opinion that the
    increased value of the premises by reason of the embankment built by the
    tenant should be estimated at four hundred dollars, and that the value
    of the premises, at the present time, without the embankment should be
    estimated at two hundred dollars.

6.  The demandant will have judgment for so much of the demanded prem-
    ises as consists of flats which were embraced in the Deborah Mills grant,
    the boundaries to be determined from the plan used at the trial. But the
    issuing of a writ of possession will be governed by the provisions of R. S.,
    ch. 106, sects. 26-31 inclusive.

On report. Judgment for demandant.

Real action brought by the plaintiff to recover possession of certain flats situate in Portland, occupied by the defendant corporation with its roadbed and tracks. The flats adjoined the upland of two Colonial grants, the southerly known as the Deborah Mills grant, and the northerly as the James Dueneven grant.

The writ is dated September 10, 1898, and was entered at the October term, 1898, of the Supreme Judicial Court, Cumberland County. The action was first tried at the April term, 1899 of said court. Plea, the general issue. "After both parties had introduced their evidence relative to the record title of each to the lots described in demandant's declaration, the case, by agreement of parties, was withdrawn from the jury and reported."

"By the terms of the report the court was to decide the question as to which of the parties has the better record title to the demanded lots. If the court should decide that question in favor of the defendant, judgment for defendant to follow; if in favor of demandant, the case to be remanded to nisi prius, to be tried upon the defendant's claim of title by adverse possession."

The Law Court decided that the defendant had the better record title to the flats adjoining the James Dueneven grant, and that the plaintiff had the better record title to the flats adjoining the upland of the Deborah Mills grant.

In accordance with the stipulation of the parties, the case was then remanded to nisi prius to be tried upon the defendant's claim of title to the flats on the Deborah Mills grant, by adverse possession. (See 96 Maine, 458.)

The action was then tried at the April term, 1904, of said S. J. Court, upon the defendant's claim of title to the flats on the Deborah Mills grant by adverse possession. The verdict was for the defendant. The plaintiff then filed a motion for a new trial and also took exceptions to certain rulings made by the presiding Justice during the trial, and the case again went to the Law Court. The exceptions were sustained, but the motion was not considered, and the case came back to nisi prius for a new trial. (See 100 Maine, 27.)

The action again came on for trial at the October term, 1905, of said S. J. Court.   After all the evidence had been taken out it was agreed to report the same to  the Law Court with  the following stipulations;   " The foregoing  testimony together with  that printed on the motion for new trial and exceptions at the trial term, 1904, is hereby reported for the consideration of the Law Court and upon so much thereof as is legally admissible and  pertinent the court are to render such judgment as the law and evidence require."

The points and facts involved in the case as last sent to the Law Court are fully stated in the opinion.

*W. K. & A. E. Neal and Charles P. Mattocks,* for plaintiff.

*Symonds, Snow,  Cook & Hutchinson,* for defendant.

SITTING:  WISWELL,  C. J.,  EMERY,  WHITEHOUSE,  STROUT, SAVAGE,  POWERS,  SPEAR,  JJ.

SAVAGE, J.   This case has been before the Law Court twice before this time, 96 Maine, 458 ; 100 Maine, 27.   It now comes on report for "such judgment as the law and evidence require."   The only questions now presented are whether the  tenant has title, by adverse possession, to so much of  the  demanded  premises as were flats embraced in the grant made by the town of Falmouth to Deborah Mills in 1721, and if not, whether the tenant is entitled to compensation for improvments made by it on the premises.   All other questions involved in the case were settled in *Proctor* v. *M. C. R. R. Co.,* 96 Maine, 458.   It was then determined, under the terms of the stipulation, that the demandant had a  better record  title to the Deborah Mills flats, but that the tenant was entitled to judgment for the remainder of the demanded premises.

It is well settled that one may obtain title to flats by adverse possession.   If, holding  under a recorded deed which includes flats as well as upland, he acquires title to the upland by adverse possession, the title will extend to the the flats covered by the deed. *Brackett* v. *Persons Unknown,* 53 Maine, 228; *Richardson* v. *Watts,* 94 Maine, 476 ; *Whitmore* v. *Brown,* 100 Maine, 410.   But in this case the grantee in the deed did  not gain title to the upland by

adverse possession; he took it by his deed. Therefore he acquired no title to the flats by constructive occupation. He could gain title to them only by actual adverse occupation, and then not beyond the line of such occupation. *Thornton* v. *Foss,* 26 Maine, 402; *Proctor* v. *M. C. R. R. Co.,* 100 Maine, 27; *Whitmore* v. *Brown,* 100 Maine, 410.

The tenant upon which is the burden of showing open, notorious, adverse, exclusive, and uninterrupted or continuous possession for some period of twenty years or more, relies chiefly upon acts done by its predecessor in title, Frederick W. Clark, or under his direction, in cutting salt grass from year to year upon or in front of the disputed premises. While the particulars as to time and place are in dispute, there is evidence tending to show, though it is not made certain, that Clark or his men acting under his orders did cut salt grass from year to year at different periods, upon the disputed premises. The grass grew mostly in patches, and the amount cut was small. But we do not think it is necessary to decide this question. Nor is it necessary to decide whether Clark's acts of occupation, wherever they were, were of such a character as would lay the foundation for a claim of adverse occupation. Assuming that all the other essentials of adverse occupation have been proved, we think the tenant has failed to show occupation for any continuous period of twenty years. The testimony of some of the witnesses as to dates is not clear. But we think that the most that it can fairly be claimed has been shown is that Clark cut the salt grass on the flats yearly from 1850 to 1865, again from 1870 to 1872, and perhaps afterwards at an uncertain date or dates between 1872 and 1885. The tenant purchased in 1885, but there is no evidence of acts of occupation by it until 1888. After that time its occupation was continuous to the date of the writ in 1898, and since. There is no evidence of occupation from 1865 to 1870. There is no evidence of occupation from 1872 to 1885 sufficiently definite as to dates to warrant a finding that it was continuous. And there is no evidence of occupation from 1885 to 1888. The tenant in endeavoring to fill these gaps or some of them, relies upon the testimony of Clark's son-in-law, McKenney. Mr. McKenney testified that he

worked for Clark from 1852 to 1856 and cut the salt grass, that from 1857 to 1865 he was away and did not see any grass cut, that he went West in 1866 to live, that he has returned every year or two and spent two or three months in the summer, except that in 1871 and 1872 he remained eighteen months and carried on Clark's brick yard. Being asked whether on his returns there was to his knowledge any change whatever in Clark's manner of dealing with the property, he answered "no." It is manifest that evidence of this character cannot be made to supply the want of definite proof of occupation. It is as indefinite and uncertain as anything could well be. Neither the question nor the context shows that the mind of the witness was directed to the flats. The "property" about which he was asked may well have been understood by him to refer to the brick yard. It does not appear that he knew the manner of Clark's dealing with any property from 1857 to 1868, when he first returned from the West. If this witness knew anything about Clark's occupation of the flats, it is fairly to be inferred that he would have been asked about it.

There is much evidence in the case about Clark's adverse claims to the flats, and some at times relating to which there is no proof of occupation. But an adverse claim is not evidence of adverse occupation. *Carter* v. *Clark*, 92 Maine, 225. Both are essential elements in support of a claim of title by adverse possession, but they are distinct from each other, and each must be proved.

The case failing to show that the tenant and those under whom it claims, have occupied the flats in question uninterruptedly for any one period of twenty years, the defense fails and the demandant is entitled to judgment.

The tenant was in open, notorious, exclusive, continuous and adverse possession of the premises for about ten years next prior to the date of the demandant's writ, and now makes claim for the value of improvements made thereon during the first three or four years of its occupation. The case before us does not show that the tenant has filed a written claim for compensation for such improvements as provided by R. S., ch. 106, sect. 24. Nor that the demandant has filed a request in writing under the same section for an estimation of what

would have been the value of the premises, at the time of trial, if no improvements had been made. But such a claim for the value of improvements is of an equitable character, and if it were necessary and justice required it, the court would remand the case to nisi prius that the proper claim and request might be filed, and a statutory determination thereof be made.

In this case, however, it does not seem to be necessary to remand the case. It is before us on report. When cases are reported to the Law Court, the pleadings, unless made otherwise by the terms of the report, are of minor consequence, except as a guide to the issues to be determined. And no doubt it was competent for the parties to waive a compliance with the statutory provisions. The case shows that evidence was introduced by both sides on the question of improvements, and that question has been argued on the merits before us. We assume therefore that the parties by reporting the case contemplated that the court would decide this question, rather than remand the case for a further trial.

The "improvements" for which the tenant claims compensation consist of a "fill" or embankment about five hundred feet long, about twenty-six feet wide at the top, and fifty-four at the bottom, and from seven to eleven feet high, containing about 6,666 cubic yards, and the ties, rails and other railway equipment which was laid thereon. The statute provides that an estimation shall be made of the increased value of the premises, by reason of the improvements, but that no allowance shall be made except for such improvements as "were judicious and proper under the circumstances." R. S., ch. 106, sect. 24. And nothing can be deemed an "improvement" which does not benefit the land, nor increase its value to the true owner. It matters not how much a so called improvement may have benefited the adverse occupier. The real question is, has it been judicious and proper and pecuniarily beneficial, as regards the owner? Under this rule the tenant's claim for ties, rails and other equipment must be disregarded. But as it appears, as we think, that the flats themselves were not available for any substantial or practical use prior to the tenant's occupation, and could only be made usable by filling above tide water, the filling was "judicious and proper," and if it added to the

value of the demandant's flats, the tenant is entitled to be allowed for it, to the extent that the value of the premises was thereby increased. We think it cannot be said that the filling by the tenant of these flats, so near such a railroad center as the Union Station in Portland is, has been of no benefit to the demandant.   The flats themselves were of little value, except to hold for future developments in that locality. The tenant has done what the demandant would have been obliged to do, in part, at least, to make his flats usable.   The demandant might not have found it necessary to make so deep a fill, as the one the tenant made.   The land might have been made usable at much less expense than the tenant incurred.   But that the land had some more value to use or to sell, after the embankment was made by the tenant, taking into account conditions existing at the date of the writ, we have no doubt.   It is not easy, however, to determine how much. We have before us two widely varying estimates of the cost of the filling, by two admittedly competent engineers.   But the cost of the fill, though properly admissible, may furnish only a slight evidence of the increased value that the embankment gives to the premises. It is by no means the criterion.   The tenant has now no right to keep its tracks upon this embankment.   We cannot know that upon any future relocation of its tracks made necessary by this decision, it will take the demanded premises as its right of way, by eminent domain or otherwise.   If it has to condemn and pay for a right of way, it may find it expedient to locate elsewhere.   A change of a very few feet would render the embankment of no particular present use or value to the demandant.   Of course the land can be used for that purpose, if it shall be so taken and the fact that it is so available must have some effect upon its present value, and upon its increased value to the demandant by reason of the embankment.   There is now no other prospective use, we think, which materially affects its value. It is claimed by the demandant that the embankment injuriously affects his use of some portion of the remainder of his flats.   We think however that that damage is trifling.

Upon the whole, we are of opinion that the increased value of the premises by reason of the embankment should be estimated at four hundred dollars, and that the value of the premises at the present

time without the embankment should be estimated at two hundred dollars.

The demandant therefore is entitled to judgment for so much of the demanded premises as consists of flats which were embraced in the original Deborah Mills grant, the boundaries to be determined from the plan used at the trial. But the issuing of a writ of possession will be governed by the provisions of R. S., ch. 106, sects. 26-31 inclusive.

*Judgment for demandant.   Writ of possession to issue in accordance with the opinion.*